```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CHRISTIAN KILLORAN, on behalf
of his son, A.K.,

                    Plaintiff,            MEMORANDUM & ORDER
                                          20-CV-4121(JS)(SIL)
          -against-

WESTHAMPTON BEACH SCHOOL DISTRICT;
MICHAEL RADDAY, Superintendent;
MARY ANNE AMBROSINI, Director of
Pupil Personnel; SUZANNE MENSCH,
HALSEY C. STEVENS, JOYCE DONNESSON,
and GEORGE R. KAST, as Board of
Education Members,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff: Christian Killoran, Esq., pro se
               Killoran Law PC
               132-13 Main Street, Suite 13
               Westhampton Beach, New York 11978

For Defendant: Jaclyn L. Dar Conte, Esq.
               Devitt Spellman Barrett, LLP
               50 Route 111, Suite 314
               Smithtown, New York 11787
```

SEYBERT, District Judge:

        This request for emergency relief is one of a series of actions plaintiff Christian Killoran ("Killoran" or "Plaintiff") has brought against defendants Westhampton Beach School District (the "District") and several Westhampton employees (collectively, "Defendants") on behalf of his son, A.K.

        For the following reasons, and for the reasons stated on the record at the telephone hearing held on September 8, 2020,

Plaintiff's motion for this Court to "issue an order equitably compelling the defendant/respondents to facilitate the physical space necessary so as to allow [his son A.K.'s] education to occur commensurate with the commencement of the 2020-2021 academic year" is DENIED. (Combined Compl. and Aff. in Supp. of Order to Show Cause ("Compl."), D.E. 1, at ¶ 2 (emphasis omitted).)

## BACKGROUND

The parties and the Court are familiar with the extensive facts underlying the present application.[1] As relevant here, at the start of the 2019 academic year, in response to a prior order from this Court in another case (see Sept. 6, 2019 Elec. Order, 19-CV-5078), the parties reached an agreement (the "Agreement") as to A.K.'s education (Agreement, Leahy Aff. Ex. A, D.E. 6-1; Compl. ¶¶ 8-10). The Agreement covered terms of substance and logistics. As Plaintiff himself alleges, "this arrangement became the 'last agreed upon' pendency agreement brokered between the parties." (Compl. ¶ 12.) Further, "[p]ursuant to the stipulated agreement

---

[1] Plaintiff has filed numerous other lawsuits against the District regarding A.K.'s education. (See related matters 15-CV-4743, 17-CV-0866, 17-CV-3553, 18-CV-3389, 19-CV-3298, 19-CV-5078, 19-CV-6663, and 20-CV-0269.) The Court confines its analysis in this Memorandum and Order, however, solely to the facts relevant to the present request for preliminary injunctive relief. Further, as the Court's prior orders note, Plaintiff is an attorney. Accordingly, his pleadings are not entitled to the "special consideration which the courts customarily grant to pro se parties." Bazadier v. McAlary, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted).

2

. . . [A.K.] began receiving his instruction accordingly, which continued up and until the Covid-19 pandemic ensued, wherein all instruction became virtual." (Compl. ¶ 12.)

Pursuant to the Agreement, generally, A.K. would receive a hybrid of services in the District and then be bussed to the local library (not the library within the school) for special education instruction. (Opp., D.E. 6, ¶ 11.) The Agreement specifically contemplated what would occur if the local library became unavailable:

> Should the library become unavailable for home instruction or special instruction, due to an emergency, a library closure, or other circumstances not caused by and beyond the control of the parties, the terms above shall remain operative except that the [special education] instruction . . . shall take place in [A.K.]'s home, if available. In the event the library shall be closed for a period exceeding 7 days and [A.K.]'s home is unavailable, the parties will seek in good faith to orchestrate another, alternative off-site placement location.

(Agreement ¶ 8.)

As might be expected with the commencement of the 2020 academic year during the COVID-19 pandemic, the library has become unavailable. Accordingly, in advance of first day of school, Defendants sent Plaintiff correspondence outlining its plan due to the library closure: A.K. would receive daily services at the school from 7:30 a.m. to 9:00 a.m.; then receive bussing from the school to his home; and receive in-person home instruction from a

3

teacher three days per week and remote instruction from the same teacher two days per week. (Aug. 28 Letter, D.E. 6-5.) In a follow-up letter responding to Plaintiff's dissatisfaction with allowing someone into his home, Defendants then sought to confirm whether Plaintiff wished for full-time remote instruction. (Sept. 3 Letter, D.E. 6-7.) That same day, Plaintiff emailed Defendants, writing that the "issue has been raised within the context of a Federal OTSC submitted yesterday. [A.K.] must receive his instruction at the [s]chool or alternatively at the Public Library.[2] In any event DO NOT DROP [A.K.] OFF AT HOME, AS DOING SO WILL MOST CERTAINLY IMPACT HIS HEALTH, SAFETY AND WELL-BEING." (Ambrosini Aff., D.E. 6-4, ¶ 14 (capitalization in original).)[3]

Plaintiff filed this action on September 2, 2020. (See Compl.) As he did not serve Defendants, the Court ordered the pro se office to contact Plaintiff and direct him to do so. (Sept. 3, 2020 Elec. Order.) Defendants filed their opposition papers on

---

[2] Plaintiff does not specifically challenge Defendants' actions as to any other portions of the Agreement.

[3] As Defendants recounted at the hearing, because they believed that implicit in this email was the threat that no adult would be home to receive A.K., it became a safety issue. Rather than involve the police or child protective services, and despite Plaintiff's strong-arm tactics, they made arrangements to keep A.K. in the school on September 8. Defendants explained that this emergency response involved last-minute shuffling and use of a conference room that was booked for other things that day, and the Court understands it is not feasible for the duration of the academic year.

4

the morning of September 8, 2020 and the Court conducted a hearing later that afternoon.[4]

## DISCUSSION

As a court in this Circuit recently summarized,

> Ordinarily, to obtain a preliminary injunction, the movant has to 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. But where the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved.

L.A. v. New York City Dep't of Educ., No. 20-CV-05616, 2020 WL 5202108, at *2 (S.D.N.Y. Sept. 1, 2020) (quoting Ventura de Paulino v. N.Y. City Dep't of Educ., 959 F.3d 519, 529 (2d Cir. 2020)). The "stay put" provision applies during pendency placements. See id. (quoting 20 U.S.C. § 1415(j)). "The 'stay put' provision is, in effect, an automatic preliminary injunction. Implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the

---

[4] The Court notes that on the first day of school, September 8, 2020 Defendants Superintendent Radday and Director of Pupil Personnel Ambrosini took time to participate in the hearing.

5

agency and consented to by the parent." Id. (internal quotation marks and citation omitted).

Even in light of the tremendous difficulties placed on all students, parents, and school employees by COVID-19, Defendants are substantially complying with the Agreement. And although A.K.'s education is currently subject to numerous administrative and judicial challenges, and Plaintiff strongly disagrees with A.K.'s educational plan, "pendency placement and appropriate placement are separate and distinct concepts." Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea, 353 F. Supp. 2d 449, 459 (S.D.N.Y. 2005). Accordingly, applying the above principles, the IDEA's "stay put" provision is not violated. However, even if Court were to liberally construe the facts as disturbing the "status quo" of A.K.'s education, it would not grant emergency relief.

First, Plaintiff has not shown a likelihood of success on the merits or a balance of hardships tipping decidedly in his favor. As discussed, Defendants' proposal complies with the Agreement (that Plaintiff concedes contains the operative pendency terms). Plaintiff further concedes that until the onset of COVID-19, A.K. was "receiving his instruction accordingly." (Compl. ¶ 12.) The library is now closed. Thus, the Agreement provides that A.K. shall receive instruction in A.K.'s home. Plaintiff, however, objects to in-person or remote home instruction because

Plaintiff and his wife work and cannot stay home, and do not wish to allow someone to enter their home during COVID. (Compl. ¶ 19.) Accordingly, Plaintiff demands that Defendants provide instruction in the (closed) public library or the school.

As the library is not an option, the Court considers the feasibility of the school. The Court need not exhaustively detail the incredible COVID-related challenges facing not only this school district, but schools all over the state, country, and world. Defendants explain that the school facilities are crowded and staff are attempting to maintain social distancing and safety protocols. (Ambrosini Aff. ¶¶ 19-26.) Defendants also detail how A.K.'s limitations with toileting, eating, and sanitation, among others, provide particular challenges during COVID. (Ambrosini Aff. ¶¶ 29-32.) The Court has weighed Plaintiff's desire for a change in A.K.'s current pendency placement to ease the burden of home instruction on Plaintiff and his wife against the safety of all others in the district. The Court is sympathetic to Plaintiff's concerns, as well as the struggles of every working family trying to balance childcare needs during these times. However, the balance of hardships does not tip in Plaintiff's favor.

Second, Plaintiff has not demonstrated irreparable harm. He contends that unless this Court issues an order mandating Defendants to find physical space in the school for A.K.'s

7

instruction, A.K. and the "family at large will suffer immediate and irreparable harm and injury" and that A.K. risks suffering "irredeemable regression." (Compl. ¶¶ 6, 27.) Again, all students nationwide are grappling with modified learning right now. Further, even if Plaintiff had "demonstrated that they will likely suffer irreparable harm in the absence of injunctive relief, a careful balancing of the equities nevertheless favors Defendant." Ass'n of Jewish Camp Operators v. Cuomo, No. 12-CV-0687, 2020 WL 3766496, at *20-*21 (N.D.N.Y. July 6, 2020) (while Jewish parents have a cognizable interest in having their children attend religious overnight camps, "granting injunctive relief to open overnight summer camps runs contrary to the public interest in stopping the spread of the COVID-19 virus").

## CONCLUSION

As stated on the record, and herein, Plaintiff's request for emergency injunctive relief is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  10 , 2020
       Central Islip, New York