```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son,
AIDEN KILLORAN,

                    Plaintiff,        MEMORANDUM & ORDER
                                      20-CV-4121(JS)(SIL)
    -against-

WESTHAMPTON BEACH SCHOOL
DISTRICT; MICHAEL RADDAY,
as Superintendent;
MARY ANNE AMBROSINI,
as Director of Pupil Personnel;
SUZANNE MENSCH, HALSEY C. STEVENS,
JOYCE DONNESSON, and GEORGE R. KAST,
as Board of Education Members,

                    Defendants.
---------------------------------x
For Plaintiff:      Christian Killoran, Esq., Pro Se
                    132-13 Main Street
                    Westhampton Beach, New York 11978


For Defendants:     Anne C. Leahey, Esq.
                    Anne Leahey Law, LLC
                    17 Dumplin Hill Lane
                    Huntington, New York 11743
```

SEYBERT, District Judge:

Pro se plaintiff Christian Killoran ("Plaintiff"), individually and as parent to A.K., a child with Down Syndrome, commenced this action against defendants Westhampton Beach School District ("Westhampton" or the "District"), Michael Radday ("the Superintendent"), Mary Anne Ambrosini ("Director of Pupil Personnel"), Suzanne M. Mensch, Halsey C. Stevens, Joyce L.

Donnesson, and George R. Kast, Jr. (together, the "School Board," and collectively with Westhampton, the Superintendent, and the Director of Pupil Personnel, the "Defendants"). Plaintiff's Complaint purports to allege violations of the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 701 et seq., and 42 U.S.C. § 1983 ("Section 1983"). (See Combined Verified Complaint and Affidavit in Support of Order to Show Cause, ("Compl."), ECF No. 1.)[1]

Currently pending before the Court is Defendants' motion to dismiss the Complaint in in its entirety (hereafter, "Dismissal Motion") (ECF No. 16.), and Plaintiff's cross-motion for partial summary judgment with respect to his IDEA claim (hereafter, the "Cross Motion"). (ECF No. 19.[2]) After careful consideration, for the reasons stated herein, Defendants' Dismissal Motion is GRANTED, and Plaintiff's Cross-Motion is DENIED.

---

[1] Note that the Court cites to electronic case filing ("ECF") system pagination throughout this Memorandum and Order.

[2] In his Cross-Motion (ECF No. 19), Plaintiff also includes his opposition to Defendants' Dismissal Motion. (See infra, Background, Part II.) To the extent the Court cites to this document in the context of Plaintiff's opposition, it will use the notation "Pl. Opp'n".

BACKGROUND

I.   Factual Background

The parties and the Court are familiar with the extensive facts underlying the present litigation.   In the interest of brevity, only the proceedings relevant to the issues presented in the parties' motions are discussed below.[3]

On September 20, 2019, in response to a prior order from this Court in a related case (see Case No. 19-CV-5078, Sept. 6, 2019 Elec. Order), the parties reached an agreement concerning A.K.'s pendency placement during the parties' ongoing administrative proceedings (hereafter, the "2019 Agreement"). (See 2019 Agreement, ECF No. 1 at 9-11.[4])   Pursuant to said Agreement, A.K. would receive a hybrid of services.   (Id. at ¶¶ 1-3.)   For example: A.K. would first be bussed to the District where he would receive adaptive physical education, speech pathology; and occupational therapy (id. at ¶ 2); he would then be bussed to the local library for his special education instruction by a District-provided special education teacher (id. at ¶ 3); and, thereafter, AK's parents would be responsible for his transport home (id. at ¶ 4).   As Plaintiff alleges, the 2019 Agreement became

---

[3]  The facts set forth herein are taken from the Complaint, as well as the documents attached to it as exhibits, and are accepted as true for purposes of the instant motion.   Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

[4]  The 2019 Agreement is attached to the Complaint in this action.

the "'last agreed upon' pendency agreement" between the parties. (Compl. ¶ 12.) According to Plaintiff, A.K. received his instruction in accordance with the terms of the 2019 Agreement "up and until the COVID-19 pandemic ensued, wherein all instruction became virtual." (Id.)

In March 2020, in accordance with a COVID-19 pandemic-related executive order from then-Governor Cuomo, Westhampton terminated in-person instruction; thereafter, all students, including A.K., received remote instruction through the end of the academic year. (Pl. Opp'n at 5.) When the District began the next school year in September 2020, it provided in-person instruction for all elementary and middle school students. (Id. at 6.) However, the District's high-school students were provided with a hybrid schedule consisting of in-person and remote instruction. (Id.) According to Plaintiff, "all of the District's 'alternately assessed special education students,' except [A.K.], began receiving their instructions 'full-time' and 'in-person'." (Id.)

Due to the COVID-19 pandemic, the local public library was unavailable at the commencement of the 2020 academic year. Accordingly, prior to the start of that academic year, the District notified Plaintiff that because of the library's closure due to the pandemic, it would provide A.K.'s special education instruction in his home. (Compl. ¶ 17.) Specifically, A.K. would

4

receive daily services at the school from 7:30 a.m. to 9:00 a.m., and would then be bussed home where he would receive in-person home instruction from a teacher three days per week and remote instruction from the same teacher two days per week. (See Killoran v. Westhampton Beach Sch. Dist., No. 20-CV-4121, 2020 WL 5424722, at *2 (E.D.N.Y. Sept. 10, 2020) (hereafter, the "Prior Order") (docketed herein at ECF No. 9).) Referencing the 2019 Agreement, Plaintiff responded to the District that it "should facilitate such instruction within its own facilities, particularly because it remains the [District] that is legally obligated to educate [A.K.] and also because the [District] is doing so for every other student." (Compl. ¶ 18.) Plaintiff claims that the parents "cannot reasonably, practically, or safely facilitate the education of [A.K.] at home, particularly because both of [his] parents work, and moreover that [A.K.'s] parents are not comfortable with allowing someone, outside of the family, to enter their home, unsupervised, during the Covid-19 pandemic." (Id. at ¶ 19.) The District responded to Plaintiff's concerns by offering A.K. full-time remote instruction. (Prior Order, 2020 WL 5424722, at *2.) Plaintiff responded via email stating:

> [The] issue has been raised within the context of a Federal OTSC submitted yesterday. A.K. must receive his instruction at the school or alternatively at the Public Library. In any event DO NOT DROP A.K. OFF AT HOME, AS DOING SO WILL MOST CERTAINLY IMPACT HIS HEALTH, SAFETY AND WELL-BEING.

5

(Id. (cleaned up; capitalization in original).)

II.  Procedural Background

On September 2, 2020, Plaintiff filed the instant suit by Order to Show Cause seeking to have A.K.'s special education instruction take place in the District.  (See Compl.)  Following a telephonic hearing on September 8, 2020, the Court issued an oral order, and on September 10, 2020, a written decision, denying Plaintiff's motion for emergency injunctive relief.  (See Prior Order, 2020 WL 5424722.)  The Court found that the IDEA's stay-put provision was not violated because the Defendants were substantially complying with the 2019 Agreement.  (Id. at *3.) The Court further found that "even if the Court were to liberally construe the facts as disturbing the 'status quo' of A.K.'s education, it would not grant emergency relief."  (Id.)  After weighing "Plaintiff's desire for a change in A.K.'s current pendency placement to ease the burden of home instruction on Plaintiff and his wife against the safety of all others in the district," the Court concluded that the balance of hardships did not tip in Plaintiff's favor.  (Id.)  Furthermore, the Court found that Plaintiff failed to show irreparable harm, noting that all students across the nation were grappling with modified learning due to the pandemic. (Id.)  Ultimately, the Court concluded that, in light of the library's closure due to the pandemic, Defendant's proposal complied with the 2019 Agreement.  (Id.)

6

With respect to the instant motions, Plaintiff's Complaint seeks an order "compelling the [District] to allocate the space necessary to educate [A.K.]," and compensatory education damages for a purported violation of the stay-put provision of the IDEA. (Compl., "WHEREFORE" clause; Pl. Opp'n at 26-27.) Plaintiff seeks additional damages for alleged violations of the ADA, Section 504, and Section 1983. (Compl., "WHEREFORE" clause.)

On October 30, 2020, Defendants filed their Dismissal Motion asserting that the Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Dismissal Motion.) On November 30, 2020, Plaintiff filed his opposition to Defendants' Dismissal Motion and cross-moved for partial summary judgment of Plaintiff's IDEA claim. (Pl. Opp'n.) On January 4, 2021, Defendants filed a reply brief in further support of their Dismissal Motion and in opposition to Plaintiff's Cross-Motion. (Defs. Reply, ECF No. 21.) On January 13, 2021, Plaintiff filed a reply brief in support of his Cross-Motion. (Pl. Reply, ECF No. 23.)

[Remainder of page intentionally left blank.]

DISCUSSION

I.   Standard of Review[5]

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). Although the Court must accept all allegations in the complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task

---

[5] Initially, the Court applies the Rule 12(b)(6) standard. To the extent any claim survives dismissal, the Court would then apply the summary judgment standard. However, because in this instance the Court finds that Plaintiff fails to state a claim for which relief may be granted, it need not apply the summary judgment standard. Additionally, because the Court grants Defendants' Dismissal Motion in its entirety based on the pleadings and the properly attached documents, there is no need to consider the parties' affidavits and accompanying exhibits submitted in support of, and in opposition to, Plaintiff's Cross-Motion. See Staub v. Henshaw, No. 06-CV-0098, 2006 WL 1650687, at *2 (W.D.N.Y. June 7, 2006) ("[C]ourt need not consider any evidence outside the pleadings, . . . because plaintiff has failed to plead facts sufficient to state a claim.").

that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect").

Further, it is well-established that pleadings filed by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).  Where, as here, an attorney is proceeding pro se, however, his pleadings are not entitled to the "special consideration which the courts customarily grant to pro se parties." Bazadier v. McAlary, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted); see Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-3298, 2020 WL 4740498, at *4 (E.D.N.Y. June 24, 2020) ("[T]he Court takes notice that Plaintiff [Christian Killoran], although proceeding pro se, is a registered attorney.") report and

9

recommendation adopted, 2020 WL 4743189 (E.D.N.Y. July 27, 2020).

Accordingly, although Plaintiff is proceeding pro se, his

Complaint is held to the same standards as pleadings drafted by

lawyers. See Bazadier, 464 F. App'x at 12.

II.  Alleged IDEA Violation

         Plaintiff claims that Defendants have violated the stay-

put provision of the IDEA and therefore seeks a permanent

injunction in the form of "an 'equitable order' compelling the

[District] to allocate the space necessary to educate [A.K.]" in

the District.  (Compl., "WHEREFORE" clause.)  Defendants contend

that Plaintiff fails to state an IDEA claim because the Complaint

fails to allege that the District breached the Agreement.

(Dismissal Motion at 15-17.)  For the reasons discussed below, the

Court agrees.

    A. The IDEA's Stay-Put Provision

         The IDEA's stay-put provision provides in relevant part

that "during the pendency of any proceedings conducted pursuant to

[20 U.S.C. § 1415] . . . the child shall remain in the then-current

educational placement of the child."  20 U.S.C. § 1415(j).  The

term "then-current educational placement" in the stay-put

provision typically refers to the child's last agreed-upon

educational program before the parent requested a due process

hearing to challenge the child's IEP.  Ventura de Paulino v. N.Y.

City Dep't of Educ., 959 F.3d 519, 532 (2d Cir. 2020); Arlington

Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 697 (S.D.N.Y. Mar. 14, 2006) (noting that the stay-put provision is applicable to pendency placement that arises from an agreement between the parties) (citing Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 137 F. Supp. 2d 83 (N.D.N.Y. 2001), aff'd, 290 F.3d 476, 484 (2d Cir. 2002), cert. denied, 537 U.S. 1227 (2003))). The stay-put provision exists to "provide stability and consistency in the education of a student with a disability," Arlington Cent. Sch. Dist., 421 F. Supp. 2d at 696, and to maintain "the educational status quo while the parties' dispute is being resolved." T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014). Thus, in effect, the provision is "an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships." Arlington Cent. Sch. Dist., 421 F. Supp. 2d at 696 (citing Zvi D. v. Ambach, 694 F .2d 904, 906 (2d Cir.1982)). Once a pendency placement has been established, it can only be changed in one of four ways: (1) by an agreement of the parties; (2) by an unappealed administrative decision of a hearing officer; (3) by a decision of a state review officer ("SRO") that agrees with the child's parents that a change of placement is appropriate; or (4) by a court determination on an appeal from an SRO's decision. Schutz, 290 F.3d at 484.

B. <u>Application</u>

Here, the parties agree that the last agreed upon educational placement for A.K. is set out in the 2019 Agreement. That Agreement provides that A.K. is to receive his special services daily in the District followed by his special education instruction in the local public library. (2019 Agreement ¶¶ 1-3; Pl. Opp'n at 5.)  Plaintiff concedes that until the onset of the COVID-19 pandemic, A.K. was receiving his instruction in accordance with the 2019 Agreement.  (Compl. ¶ 12.)  Plaintiff contends, however, that since the library's closure, Defendants have violated the stay-put provision of the IDEA, and A.K. "has not received any education since September."  (Pl. Reply at 6.)  Plaintiff argues that the library's closure is a "pendency changing event," or, in the alternative, "implementation of the current 'pendency agreement' has been rendered impossible."  (<u>Id.</u>; Pl. Opp'n at 8.)  Thus, Plaintiff seeks to have A.K.'s "'existing pendency program' [ ] implemented within [the District] until the library re-opens." (Pl. Opp'n at 17.)  Plaintiff's contentions lack merit.

Plaintiff fails to allege a pendency changing event. Admittedly, there has been no change in placement via an agreement of the parties, an unappealed determination by a hearing officer, a decision by the SRO, or a determination of a court.  Further, the library's closure due to the pandemic is likely not a pendency-

changing event.  See, e.g.,  J.T. v. de Blasio, 500 F. Supp. 3d
137, 187-88 (S.D.N.Y. 2020)(finding no change in pendency
placement where schools closed and switched to remote learning due
to COVID-19 pandemic) (appeal pending); see also N.D. v. Hawaii
Dep't of Educ., 600 F.3d 1104, 1116, (9th Cir. 2010) (finding that
the shutting down of all schools in Hawaii did not constitute a
change in the educational placement of disabled children).

        Plaintiff contends, however, that "even if the Court is
not inclined to view the library's closing as being a conventional
'pendency changing event,'" it should "view the circumstances at
hand as profiling as a seeming case of 'first impression'
concerning pendency, brought about by the novelty of a world-wide
pandemic." (Pl. Opp'n at 18.)    Plaintiff argues that
"implementation of the current 'pendency agreement' has been
rendered impossible" (Id. at 8), and therefore the Court should
"reform" the 2019 Agreement and "name the [District] as the most
appropriate public situs to facilitate [A.K.'s education], at
least until the library re-opens." (Pl. Reply at 6.)

        However, because the 2019 Agreement already provides for
the contingency of the library's closure, the Court need not
"reform" it; the relevant provision provides:

        Should the library become unavailable for home
        instruction or special instruction, due to an
        emergency, a library closure, or other
        circumstances not caused by and beyond the
        control of the parties, the terms above shall

> remain operative except that the [special
> education] instruction . . . shall take place
> in [A.K.]'s home, if available. In the event
> the library shall be closed for a period
> exceeding 7 days and [A.K.]'s home is
> unavailable, the parties will seek in good
> faith to orchestrate another, alternative off-
> site placement location.

(2019 Agreement ¶ 8.)  Thus, according to the terms of the 2019
Agreement, the library's extended closure due to the COVID-19
pandemic required that A.K.'s special education instruction take
place in his home, if available. (Id.)  In the event Plaintiff's
home is unavailable, as he now claims, the language of the 2019
Agreement is clear:  The parties are to arrange for an alternative,
off-site location.  (Id. (emphasis added).)

Plaintiff claims that his home is unavailable because
A.K.'s "parents would have to quit their jobs," "hire educational
personnel capable of implementing [A.K.'s] educational
accommodations," "hire supervisorial staff to supervise the safety
of [A.K.]," and "[A.K.'s] family would have to avail itself to the
health risks of allowing outside people into their home during the
world-wide Covid-19 pandemic."  (Pl. Reply at 5-6.)  Plaintiff
further asserts that the "[2019 A]greement clearly provides that
in circumstances where such instruction was temporarily
compromised, that [A.K.] would be brought to the [District] for
purposes of receiving his instruction." (Pl. Reply at 5; see also
Pl. Opp'n at 21.)  Plaintiff supports this claim relying upon the

"fall back" placement site provision regarding teacher unavailability, as provided for in paragraph 3 of the 2019 Agreement. (Pl. Opp'n at 21-22, n.18, 19.) Plaintiff is mistaken.

> Paragraph 3 of the 2019 Agreement provides:

> [i]n the event [A.K.]'s special education teacher shall cancel instruction, {A.K.] shall not be sent home, but the [District] shall, upon its discretion, either bus [A.K.] to the local library with his aide, or keep him within the [District], within a safe and appropriate space, where [A.K.] will receive carry-over activities. Under these circumstances, the [District's] obligations to maintain [A.K.]'s presence within the local library, or within the [District] itself, shall not exceed 2 hours.

(2019 Agreement ¶ 3.) Thus, according to its terms, paragraph 3 of the Agreement applies only when the special education teacher cancels instruction, and not in the event that the library closes and A.K.'s home is unavailable. Moreover, the District has offered to provide A.K.'s special education services in accordance with the appropriate provision of the 2019 Agreement, i.e., paragraph 8. However, Plaintiff claims that his home is unavailable and insists that A.K.'s special education instruction take place only in the District.

The Court finds that Defendants have not violated the stay-put provision. In fact, in an effort to accommodate Plaintiff's trepidations regarding having someone come into his

15

home during the COVID-19 pandemic, the District offered A.K. remote instruction by the District's special education teacher. (Pl. Opp'n at 10.) Additionally, to alleviate Plaintiff's concern about missing work in order to supervise A.K. during home instruction, the District provided Plaintiff the option of providing A.K.'s special education instruction after regular school hours. (Pl. Opp'n at 10-12.) However, Plaintiff rejected these accommodations and made it clear that nothing short of having A.K. physically present in the District for his special education instruction would be acceptable.[6] (Id. at 11-12.)

Moreover, even if there was no pendency placement agreement between the parties, "it is the [District], not the Parents, that is authorized to decide how (and where) the Student's pendency services are to be provided." Ventura de Paulino, 959 F.3d at 533-34 (stating a stay-put provision "does not eliminate [ ] the school district's preexisting and independent authority to determine how to provide the most-recently-agreed-upon educational program . . . [i]t is up to the school district, not the parent, to decide how to provide that educational program [until the IEP

---

[6] Notably, when schools first closed in March 2020 due to the COVID-19 pandemic, A.K. began receiving remote instruction in his home through the District. (Pl. Opp'n at 5.) He continued to receive special education services remotely during the summer. (Id.) Further, since the high school reopened for in-person instruction on a hybrid schedule, A.K. has been attending the high school for his daily services in compliance with the 2019 Agreement. (Id. at 9.)

dispute is resolved], so long as the decision is made in good faith") (internal quotations and citation omitted).   Thus, Plaintiff's desire to have A.K.'s special education instruction occur in the District does not obviate the District's authority.[7]

Hence, because the Court finds that the District has not breached the 2019 Agreement regarding A.K.'s pendency placement, the IDEA's stay-put provision has not been violated.   Therefore, Plaintiff's IDEA claim is DISMISSED WITH PREJUDICE.[8]

III. Discrimination Claims Against the District

Plaintiff asserts that Defendants violated the ADA and Section 504 by failing to "effectuate reasonable modifications and/or accommodations, so as to address [A.K.]'s disability," and that "[i]n this regard, the [District] discriminate[d] against [A.K.] predicated upon his disability."   (Compl. ¶¶ 22, 23.)

---

[7] Further, although neither party has provided the Court with an update, the Court notes that it appears the local library has reopened since the parties' dispute arose.   See https://westhamptonlibrary.net/ (last visited March 8, 2022).   If that is so, A.K.'s special education services can once again be provided for in the local library in accordance with the 2019 Agreement.

[8] The Court notes that Plaintiff's IDEA claim against the individual defendants is dismissed for the additional reason that there is no individual liability under the IDEA.   S.W. v. Warren, 528 F. Supp. 2d 282, 298 (S.D.N.Y. 2007) (citing 20 U.S.C. § 1403(a)).   Additionally, "monetary damages are not available under the IDEA."   Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir. 2002).

Plaintiff's conclusory allegations fail to allege a discrimination claim under either the ADA or Section 504.[9]

As the standards are generally the same under either the ADA or Section 504, courts treat claims under the two statutes identically.  <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 272 (2d Cir. 2003); <u>see also</u> <u>Rodriguez v. City of N.Y.</u>, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").  To make out a <u>prima facie</u> case under the ADA or Section 504, a plaintiff must show:

> (1) that [he] is a qualified individual with a disability;  (2) that the defendants are subject to [the pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.

<u>Harris v. Mills</u>, 572 F.3d 66, 73-74 (2d Cir. 2009) (internal quotation marks and citation omitted).

---

[9]  In his opposition to Defendants' Dismissal Motion, Plaintiff appears to assert a retaliation claim.  (<u>See</u> Pl. Opp'n at 19-20).  However, a plaintiff "cannot amend h[is] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." <u>K.D. ex rel. Duncan v. White Plains Sch. Dist.</u>, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citation omitted).  In any event, Plaintiff's claim that "the defendant district is simply trying to exert as much 'pressure' upon the plaintiff, as retaliation for the plaintiff's tangential litigation pending against the defendant district" (Pl. Opp'n at 19), fails to plead a plausible retaliation claim.

Notably, a violation of the IDEA, without more, is insufficient to support a claim of disability-based discrimination under the ADA or Section 504.  See French v. N.Y. State Dep't of Educ., 476 F. App'x 468, 472-72 (2d Cir. 2011) (a "fail[ure] to show that the alleged 'discrimination' is anything more than a rehashing of [the plaintiff's] allegation that the defendants failed to provide her with a FAPE[10]" warrants dismissal of plaintiff's ADA and Section 504 claims).  Rather, where a plaintiff asserts denial of a FAPE, there must be evidence that the school district acted with "deliberate or reckless indifference to the student's federally protected rights" or with "bad faith or gross misjudgment."  Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist., No. 07-CV-8828, 2013 WL 3929630, at *11 (S.D.N.Y. July 30, 2013) (cleaned up); see also S.W., 528 F. Supp. 2d at 290 ("[P]laintiffs can rely on Section 504 to claim they are denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive, if they can show that Defendants acted with bad faith or gross misjudgment in the administration of disability services.").

Here, the parties do not dispute that A.K. is disabled under the terms of the ADA and Section 504 or that the District is covered by these statutes.  The only question is whether Defendants

---

[10]  "FAPE" is the acronym for "free appropriate public education".

failed to provide reasonable accommodations to A.K. or discriminated against A.K. because of his disability, and in so doing, acted with "deliberate or reckless indifference" or "bad faith" or "gross misjudgment." Plaintiff contends that the District failed to make reasonable accommodations to accommodate A.K.'s disability when it "refus[ed] to accommodate the physical space necessary to educate [A.K.] -- namely by providing for the physical space necessary to accommodate a desk and two chairs." (Pl. Opp'n at 19.) However, as discussed supra, the 2019 Agreement governs the pendency placement of A.K., and pursuant to its terms, the District was not required to "accommodate the physical space necessary to educate A.K." when the library closed.

Moreover, Plaintiff makes no allegation of bad faith or gross misjudgment on the part of the District; rather, he baldly alleges that "the school district's actions reflect nothing short of abject malice, gross indifference and/or retaliation against the plaintiff." (Compl. ¶ 29.) Such conclusory allegations are insufficient to plausibly state a discrimination claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Y.D. v. N.Y.C. Dep't of Educ., No. 14-CV-1137, 2016 WL 698139, at *6 (S.D.N.Y. Feb. 19, 2016) (courts "dismiss Section 504 claims that 'are, in actuality, merely restatements of [a plaintiff's] IDEA claims,' where plaintiff fails to offer any facts

that he 'was denied a federal benefit <u>because</u> of his disability'")
(quoting <u>Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist.</u>, 473
F. Supp. 2d 477, 484 (S.D.N.Y. 2007) (emphasis in original); <u>Zahran</u>
<u>v. N.Y. Dep't of Educ.</u>, 306 F. Supp. 2d 204, 213 (N.D.N.Y. 2004)
(dismissing Section 504 claims because they were "substantially
the same as . . . the IDEA claim").

Thus, Plaintiff's discrimination claims must be
dismissed as he fails to allege that A.K. was discriminated against
on the basis of his disability.  Accordingly, Plaintiff's ADA and
Section 504 claims against the District are DISMISSED WITHOUT
PREJUDICE.

IV.  <u>Discrimination Claims Against the Individual Defendants</u>

"Individuals in their personal capacities are not proper
defendants on claims brought under the ADA or the Rehabilitation
Act." <u>Keitt v. New York City</u>, 882 F. Supp. 2d 412, 426 (S.D.N.Y.
2011) (citing <u>Harris v. Mills</u>, 572 F.3d 66, 72-73 (2d Cir. 2009)).
Therefore, Plaintiff's ADA and Section 504 claims against the
individual Defendants, to the extent brought against them in their
personal capacities, must be dismissed; accordingly, said claims
are DISMISSAL is WITH PREJUDICE.

To the extent that Plaintiff alleges discrimination
claims against the Defendants in their official capacities, those
claims fail as well.  The Court notes that there is a split of

authority as to whether the ADA and Rehabilitation Act[11] provide for liability against individual defendants in their official capacities.  See Holly v. Cunningham, No. 15-CV-284, 2016 WL 8711593, at *4 (S.D.N.Y. June 17, 2016) (collecting cases). Regardless, even if the Court were to conclude that the individual Defendants could be sued in their official capacity, such claims would fail in this instance.

Plaintiff's discrimination claims are wholly conclusory and are not supported by any alleged facts that plausibly show A.K. was discriminated against because of his disability.  (See, e.g., Compl. ¶¶ 22-23, 28-29, 31.)  Cf. Holly, 2016 WL 8711593, at *5 (dismissing ADA and Rehabilitation Act claims against individual defendants in their official capacity "in the absence of anything other than conclusory allegations") (collecting cases where ADA and Rehabilitation Act claims were dismissed in the absence of allegations of defendants' discriminatory animus or ill will).  It is well-settled that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Thus, as is the case here, where the complaint "tenders naked assertions devoid of further factual enhancement," Iqbal, 556 U.S. at 678, the plaintiff

---

[11]   As a reminder:  Plaintiff's Section 504 claim is brought pursuant to the Rehabilitation Act.  (See supra at 2.)  For convenience, herein, the Court will use the terms "Section 504" and "Rehabilitation Act" interchangeably.

has not "nudged [his] claim[] across the line from conceivable to plausible," Twombly, 550 U.S. at 570, thereby compelling dismissal of the complaint.   See id.; see also Iqbal, 556 U.S. at 679. Rather, having been presented with ADA and Section 504 claims against the individual Defendants in their official capacity that are devoid of facts which would plausibility support said claims, dismissal of these claims is warranted.   Accordingly, Plaintiff's ADA and Section 504 claims against the Individual Defendants in their official capacity are DISMISSED WITHOUT PREJUDICE.

V.    Section 1983 Claim Against the District

        Where an IDEA claim and a Section 1983 claim are brought simultaneously, a plaintiff must prove that a constitutional violation occurred "outside the scope of the IDEA." Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 930 F. Supp. 83, 102-03 (S.D.N.Y. 1996) (citing Bonar v. Ambach, 771 F.2d 14, 18 (2d Cir. 1985)).   Plaintiff cannot use Section 1983 to obtain damages for IDEA violations absent allegations that he was denied IDEA's "procedural safeguards or administrative remedies." Streck v. Bd. of Educ. of E. Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008); French v. N.Y.S. Dep't of Educ., No. 04-CV-0434, 2010 WL 3909163, *11 (N.D.N.Y. Sept. 30, 2010) ("Plaintiff's complaint makes clear that the alleged Section 1983 violations are merely a reiteration of his IDEA claims, as they attack Defendant['s]

alleged noncompliance with the IDEA and its effects on Plaintiff."), aff'd, 476 F. App'x 468 (2d Cir. 2011).

Here, Plaintiff alleges that A.K. "is entitled to the protections afforded by 42 U.S.C. § 1983, in the event his constitutional right of equal protection is compromised. . . . [A.K.] is being denied the right to receive a free and appropriate education (FAPE) as protected by the IDEA, in the same manner as all other special education students." (Compl. ¶ 25.)  However, the Court finds that Plaintiff fails to allege an equal protection-based Section 1983 claim.

The Equal Protection clause mandates that government agencies treat "all similarly situated people alike." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  While the typical equal protection claim involves "discrimination against people based on their membership in a vulnerable class," the Second Circuit and the Supreme Court have also recognized "'class of one'" claims "'where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).)  The parties agree that this is the type of equal protection claim asserted by Plaintiff. (Cf. Defs. Reply at 19, with Pl. Opp'n at 20-21.)

To prevail on a "class of one" claim, "the plaintiff must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are prima facie identical in all other respects." MB v. Islip Sch. Dist., No. 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y. June 16, 2015) (cleaned up). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). To survive a motion to dismiss, a complaint must make sufficient factual allegations in support of this similarity requirement. See Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (citing Iqbal, 556 U.S. at 678). Courts require "more than a bare allegation that other individuals were treated differently." Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013) (citation omitted). "[T]he court must [ ] determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Id. at 434 (quoting Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)).

Plaintiff has not met this standard. Rather, by way of example, in his Compliant, Plaintiff alleges: the District is educating "every other student" (Compl. ¶ 18); A.K. "is entitled

to be afforded the rights endowed by the IDEA, in the same fashion as all other students similarly situated to him" (¶ 24); "[i]n this case, based upon the facts at hand, [A.K.] is being denied the right to receive a . . . FAPE . . . in the same manner as all other special education students" (¶ 25 (parentheses omitted)); and, although managing to facilitate the education of "every other student," the District "cannot facilitate the education of [A.K.] to occur within the school district" (¶ 28).  These bare-bones allegations fall well-short of providing allegations plausibly supporting his claim that A.K. is being treated differently from at least one other student whose circumstances are identical to those of A.K.  Indeed, Plaintiff fails to even identify another student purportedly similar to A.K.  (See Compl., in toto.)  Cf. Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-6663, 2021 WL 1146078, at *5-6 (E.D.N.Y. Mar. 25, 2021) (finding Plaintiff's equal protection claim failed for lack of factual allegations regarding alleged comparators).

    Plaintiff's opposition arguments are equally unavailing. He contends that the District has re-opened and "has availed its 'brick and mortar' infrastructure, as well as all of its educational resources, to its entire student body, except for the plaintiff."  (Pl. Opp'n at 20.)  He claims that "[A.K.] is 'similarly situated' to all of his fellow students, [and,] [i]n particular, [A.K.] profiles as being 'similarly situated' to those

'alternately assessed special education students' currently receiving 'in-person' instruction within the defendant [D]istrict." (Id.) As discussed supra, wholly lacking from Plaintiff's Complaint are any factual allegations demonstrating how these "alternately assessed special education students'" circumstances are "prima facie identical" to A.K.'s. See Camac v. Long Beach City Sch. Dist., No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (dismissing "class of one" claim in the absence of "allegations showing how another person's circumstances are prima facie identical to [those of the plaintiffs' son]") (cleaned up); MB v. Islip Sch. Dist., 2015 WL 3756875, at *10 ("Plaintiffs' conclusory statement that [the comparator] is [ ] similarly situated to [plaintiff student], without any supporting facts to suggest an extremely high degree of similarity between [the two students] is insufficient to establish that no rational person could regard [plaintiff student's] circumstances . . . to differ from those of [the comparator] to a degree that would justify the differential treatment.") (internal quotations omitted); Irwin v. W. Irondequoit Cent. School Dist., No. 16-CV-06028, 2017 WL 881850, at *6 (W.D.N.Y. March 2, 2017) (dismissing equal protection claim where complaint referenced "other similarly situated students" but failed to set forth any facts explaining how those students' circumstances were similar to plaintiff's).

Likewise, Plaintiff offers no facts from which the Court could analyze the degree of similarity between A.K. and the "'alternately assessed special education students' currently receiving 'in-person' instruction within the defendant district." (Pl. Opp'n at 20.)  Therefore, Plaintiff's equal protection claim fails for lack of factual allegations to support his assertion that A.K. "is 'similarly situated' to all of his fellow students, [and,] [i]n particular, . . . to those 'alternately assessed special education students' currently receiving 'in-person' instruction within the defendant district."  See Ruston, 610 F.3d at 59 (affirming dismissal of "class of one" claim for failure to "allege specific examples" of similarly situated comparators); see also Killoran, 2021 WL 1146078, at *5-6 (finding plaintiff's equal protection claim failed given lack of factual allegations regarding alleged comparators).  With nothing more than these conclusory allegations, Plaintiff's equal protection-based Section 1983 claim cannot survive a motion to dismiss.  Accordingly, Plaintiff's equal protection claim is DISMISSED WITHOUT PREJUDICE.

VI.   Leave to Amend

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Plaintiff is GRANTED LEAVE TO AMEND his Complaint in accordance with this Memorandum and Order. Any Amended Complaint shall be filed within thirty (30) days from the date of this Memorandum and Order and shall be titled "Amended Complaint" and shall bear the same case number as this Memorandum and Order, i.e., No. 20-CV-4121(JS)(SIL). Further, because the Amended Complaint will completely replace the original Complaint, it must include all factual allegations and claims that Plaintiff seeks to pursue in this case. Plaintiff is cautioned that his failure to timely file an Amended Complaint will lead to the dismissal of his Complaint with prejudice and the closure of this case.

<u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that Defendants' Dismissal Motion (ECF No. 16) is **GRANTED**, and Plaintiff's Cross-Motion (ECF No. 19) is **DENIED**.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March _22_,2022
         Central Islip, New York

29