```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son,
AIDEN KILLORAN,

                    Plaintiff,          MEMORANDUM & ORDER
                                        20-CV-04121(JS)(LGD)
     -against-

WESTHAMPTON BEACH SCHOOL DISTRICT;
MICHAEL RADDAY, as Superintendent;
MARYANN AMBROSINI,¹ as Director
Of Pupil Personnel; SUZANNE MENSCH,
HALSEY C. STEVENS, JOYCE DONNESON, and
GEORGE KAST, as Board of Education
Members,

                    Defendants.
----------------------------------x
For Plaintiff:      Christian Killoran, Esq., pro se
                    132-13 Main Street
                    Westhampton Beach, New York  11978


For Defendants:     Anne C. Leahey, Esq.
                    Anne Leahey Law, LLC
                    319 Thompson Street
                    Port Jefferson, New York  11777-1919
```

SEYBERT, District Judge:

Pro se plaintiff Christian Killoran ("the Parent"), individually and as parent to A.K., a child with Down Syndrome, commenced this action regarding A.K.'s 2020-2021 school year against defendants Westhampton Beach School District

---

¹ Plaintiff has misspelled Defendant Ambrosini's first name as "Mary Anne" (see Support Memo, ECF No. 53-1, at note 1).  The Clerk of Court is directed to correct said spelling on the Case Docket to "MaryAnn".

("Westhampton" or the "District"), Michael Radday, MaryAnn Ambrosini, Suzanne Mensch, Halsey C. Stevens, Joyce Donneson, and George Kast (together, the "School Board", and collectively with Westhampton, the "Defendants").  Plaintiff's Consolidated Amended Complaint ("CAC") alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a) et seq.; and Section 1983 of Title 42 of the United States Code ("Section 1983"), 42 U.S.C. § 1983, arising out of an alleged violation of the parties' 2019 Pendency Agreement. (See generally CAC, ECF No. 38.)  Plaintiff's CAC also challenges two administrative decisions of state review officer ("SRO") Steven Hauge ("SRO Hauge") concerning the 2020-2021 school year. (See id.)  Plaintiff seeks monetary damages and compensatory education damages.

Currently pending before the Court is Defendants' motion for judgment on the pleadings on the ADA, Section 504, and Section 1983 claims that relate to Plaintiff's pendency violation claim and not to the challenges of SRO Hauge's administrative decisions (hereafter, the "Dismissal Motion").  (See Dismissal Motion, ECF No. 53; see also Support Memo, ECF No. 53-1; Reply, ECF No. 62, at

5[2] ("Defendants are not moving at this juncture to dismiss the CAC's allegations regarding [SRO Hauge's] administrative decisions which are properly before this Court pursuant to the IDEA in an appellate status pending Plaintiff's summary judgment motion."); Opp'n, ECF No. 57, at 2 and notes 1 & 2 (confirming that SRO Hauge's administrative decisions regarding the 2020-2021 school year are not part of the present Dismissal Motion).)  After careful consideration, for the reasons stated herein, Defendants' Dismissal Motion is GRANTED.

BACKGROUND

I.    Factual Background[3]

The parties and the Court are familiar with the extensive facts underlying the present litigation.  In the interest of brevity, the Court refers to its March 22, 2022 Order (hereafter, "March 2022 Order") for details regarding the original complaint's allegations and deficiencies.  (See Killoran v. Westhampton Beach

---

[2]   For ease of reference, the Court cites to the electronic case filing ("ECF") system pagination throughout this Memorandum and Order.

[3]   The facts set forth herein are taken from the CAC and are accepted as true for purposes of the instant motion.  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).  Additionally, a document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

Sch. Dist.[, aka, March 2022 Order], No. 20-CV-4121, 2022 WL 866816, (E.D.N.Y. March 22, 2022).[4]

On August 11, 2020, Plaintiff administratively challenged the District's educational program and placement of A.K. for the 2020-2021 academic year. (CAC ¶ 255.) As a result, he invoked "pendency" for the 2020-2021 school year. (Opp'n at 2-3.) The last agreed upon educational placement for A.K. was set forth in the parties' 2019 pendency agreement (the "2019 Agreement"). (CAC ¶ 58; see also ECF No. 1 at 9-11, 2019 Agreement, attached to original Compl.) As is relevant here, the 2019 Agreement provides that A.K. is to receive his special services daily in the District followed by his special education instruction in the local public library. (CAC ¶ 59.) However, due to the COVID-19 Pandemic, the local public library was unavailable at the commencement of the 2020-2021 academic year. (Id. ¶¶ 64,66,75.) Accordingly, prior to the start of that academic year, the District notified Plaintiff that because of the library's Pandemic-related closure, it would provide A.K.'s special education instruction in his home. (Id. ¶ 75.) Plaintiff refused and insisted that A.K. be educated in-District. (Id. ¶¶ 76-79.)

---

[4] While the March 2022 Order is docketed in this case at ECF No. 27, when citing to it herein, the Court will use Westlaw citations.

II.  <u>Procedural Background</u>

On September 2, 2020, Plaintiff commenced this action against Defendants by order to show cause seeking equitable relief for alleged violations of the stay-put provision of the IDEA. (Combined Verified Complaint and Affidavit in Support of Order to Show Cause ("Complaint" or "Compl."), ECF No. 1.)  The Complaint also sought relief for alleged violations of the ADA, Section 504, and Section 1983. (<u>Id.</u>)  On March 22, 2022, this Court dismissed Plaintiff's IDEA claim with prejudice finding that because the District had not breached the 2019 Agreement, the IDEA's stay-put provision had not been violated.  (<u>March 2022 Order</u>, 2022 WL 866816, at *5-6.)

With regard to Plaintiff's discrimination claims, the Court concluded that "the District was not required to "'accommodate the physical space necessary to educate A.K.' when the library closed," and further found that Plaintiff failed to allege that A.K. was discriminated against because of his disability as Plaintiff's conclusory allegations failed to allege bad faith or gross misjudgment on the part of the District.  (<u>Id.</u> at *7-8.)  Additionally, the Court found that Plaintiff's "bare-bones allegations f[e]ll well-short of providing allegations plausibly supporting his claim that A.K. [was] being treated differently from at least one other student whose circumstances are identical to those of A.K."  (<u>Id.</u> at *10.)  Accordingly, the

Court dismissed Plaintiff's ADA, Section 504, and Section 1983 claims without prejudice and granted Plaintiff leave to file an amended complaint.  (Id. at *11.)

On April 4, 2022, Plaintiff filed an Amended Complaint. (ECF No. 29.)  On April 11, 2022, Defendants filed a motion for a pre-motion conference ("PMC") seeking to move for partial dismissal of Plaintiff's Amended Complaint.  (ECF No. 32.)  On April 18, 2022, Plaintiff filed a Rule 54(b) motion seeking to declare the Court's March 2022 Order, with respect to Plaintiff's pendency claim, a final judgment.  (ECF No. 33.)  On May 9, 2022, this Court issued an Omnibus Order denying Plaintiff's Rule 54(b) motion and denying Defendant's PMC Motion without prejudice. (Omnibus Order, ECF No. 35.)  The Court's Omnibus Order further directed the parties to show cause why this case--Case No. 20-CV-4121--should not be consolidated with Case Nos. 21-CV-1281 and 21-CV-5924.[5]  (Id. at 12-15.)  Following the parties' submissions, on June 1, 2022, this Court issued an electronic order

---

[5]  Case No. 21-CV-1281, defined as the "Roth/Hauge Appeal", is Plaintiff's appeal from the decision of SRO Hauge, upholding in part IHO Roth's ruling on Plaintiff's Due Process Complaint regarding the 2020-2021 academic year finding that the District did not violate A.K.'s right to a FAPE.  Case No. 21-CV-5924, defined as the "Schiro/Hauge Appeal", is Plaintiff's appeal from the decision of SRO Hauge, upholding IHO Schiro's dismissal of Plaintiff's second Due Process Complaint regarding the 2020-2021 academic year.  Additionally, both cases allege violations of Section 504, the ADA, and Section 1983.

consolidating Case Nos. 21-CV-1281 and 21-CV-5924 with Case No. 20-CV-4121 (the "Consolidation Order").

In accordance with the Court's Consolidation Order, on June 13, 2022, Plaintiff filed his CAC.  On February 17, 2023, Defendants filed the instant Dismissal Motion seeking the partial dismissal of Plaintiff's CAC, specifically, the ADA, Section 504, and Section 1983 claims related to the alleged pendency violation, arguing Plaintiff failed to cure the pleading deficiencies identified by the Court in its March 2022 Order.  Plaintiff filed his Opposition on March 16, 2023 (see Opp'n), to which Defendants replied on March 31, 2023.  (See Reply, ECF No. 62.)

DISCUSSION

I.   Legal Standard

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021) (quoting Lynch v. City of N.Y., 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up)).  To survive a dismissal motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint does not need "detailed factual allegations," but the standard demands "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Id. at 555. In addition, the facts pled "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Iqbal, 556 U.S. at 678).

In deciding a motion for judgement on the pleadings, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document upon which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002).

Further, it is well-established that pleadings filed by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). However, where, as here, an attorney is proceeding pro se, his pleadings are not entitled to the "special consideration which the

courts customarily grant to <u>pro se</u> parties." <u>Bazadier v. McAlary</u>, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted); <u>see also</u> <u>Killoran v. Westhampton Beach Sch. Dist.</u>, No. 19-CV-3298, 2020 WL 4740498, at *4 (E.D.N.Y. June 24, 2020) ("[T]he Court takes notice that Plaintiff [Christian Killoran], although proceeding <u>pro se</u>, is a registered attorney."), <u>report and recommendation adopted</u>, 2020 WL 4743189 (E.D.N.Y. July 27, 2020). Accordingly, although Plaintiff is proceeding <u>pro se</u>, because he is an attorney, his CAC is held to the same standards as pleadings drafted by lawyers. <u>See</u> <u>Bazadier</u>, 464 F. App'x at 12.

II.  <u>Discrimination Claims Under the ADA and Section 504</u>

Plaintiff's CAC purports to allege discrimination claims pursuant to the ADA and Section 504 for Defendants' alleged failure to provide reasonable accommodations to A.K. for the 2020-2021 academic year. (CAC ¶¶ 131-32, 154.) For the reasons that follow, the Court finds Plaintiff's CAC fails to cure the deficiencies of his original Complaint and, therefore, fails to state a plausible claim upon which relief may be granted.

The standards governing claims under the ADA and Section 504 are identical. <u>See</u> <u>Rodriguez v. City of N.Y.</u>, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims

in tandem.").  To make out a <u>prima</u> <u>facie</u> case under the ADA or Section 504, a plaintiff must show:

> (1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.

<u>Harris v. Mills</u>, 572 F.3d 66, 73-74 (2d Cir. 2009) (internal quotation marks and citation omitted).  Notably, "[e]vidence of an IDEA violation, without more [ ] is insufficient to demonstrate a violation under either Act." <u>Killoran v. Westhampton Beach Sch. Dist.</u>, No. 22-0204, 2023 WL 4503278, at *3 (2d Cir. July 13, 2023) (summary order) (citing <u>Wenger v. Canastota Cent. Sch. Dist.</u>, 979 F. Supp. 147, 152 (N.D.N.Y. 1997) ("[S]omething more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities . . . ."), <u>aff'd</u>, 208 F.3d 204 (2d Cir. 2000)).  Where a plaintiff asserts denial of a FAPE, there must be evidence that the school district acted with "deliberate or reckless indifference to the student's federally protected rights" or with "bad faith or gross misjudgment." <u>Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.</u>, No. 07-CV-8828, 2013 WL 3929630, at *11 (S.D.N.Y. July 30, 2013) (cleaned up); <u>see also</u> <u>C.L. v. Scarsdale Union Free Sch. Dist.</u>, 744 F.3d 826 (2d Cir. 2014) ("[E]vidence of bad faith or deliberate

indifference [is] required to establish a Rehabilitation Act claim.").

Here, the parties do not dispute that A.K. is disabled under the terms of the ADA and Section 504 or that the District is covered by these statutes.  The only question is whether the CAC plausibly alleges that Defendants failed to provide reasonable accommodations to A.K. or discriminated against A.K. because of his disability, and thereby acted with "deliberate or reckless indifference" or "bad faith" or "gross misjudgment."  See March 2022 Order, 2022 WL 866816, at *7.  In this regard, Plaintiff's CAC alleges: (1) that the District was required to educate A.K. in-District or at least come up with an alternate placement; and (2) that Defendants' alleged FAPE violation, upon which Plaintiff bases his administrative appeals, demonstrates bad faith.  (CAC ¶¶ 85-93, 140-57.)

With respect to his first claim, Plaintiff alleges that "[d]espite the fact that the existing 'pendency agreement' called for the defendant school district to seek an alternative educational placement for AK, during the times in which the local library was closed, and his home was unavailable, the defendant school district failed to research or offer a single alternative site," and therefore "AK was denied a reasonable accommodation." (CAC ¶¶ 143, 154-55; see also id. ¶¶ 88-89, 142-43.)  Plaintiff contends that the "[D]efendants['] fail[ure] to provide the

physical space necessary to accommodate a single desk and a chair for the plaintiff's instruction . . . ," illustrates "reckless indifference, gross bad faith and gross misjudgment."  (Opp'n. at 9.)  The Court is unpersuaded.

Like his original Complaint, Plaintiff's CAC rests upon the inaccurate contention that the 2019 Agreement required the District, solely, "to seek an alternative educational placement for AK during times in which the local library was closed, and [A.K.'s] home was unavailable."  (CAC ¶ 89; cf. Compl. ¶¶ 17, 26, 29, with CAC ¶¶ 88-91.)  The Court rejected this viewpoint in its March 2022 Order when dismissing Plaintiff's IDEA-violation claim.  (See 2022 WL 866816, at *5-7 (finding that, pursuant to terms of 2019 Agreement, "the District was not required to 'accommodate the physical space necessary to educate A.K.' when the library closed").)  Plaintiff's current mischaracterization of the 2019 Agreement, in particular, that portion of the Agreement, which the Court presently defines as the "Alternative, Off-Site Placement Provision", is no more persuasive now.  The Alternative, Off-Site Placement Provision is the last sentence in paragraph 8 of the 2019 Agreement, which reads:  "In the event the library shall be closed for a period exceeding 7 days and [A.K]'s home is unavailable, the parties will seek in good faith to orchestrate another, alternative off-site placement location."  (2019 Agreement ¶ 8, last sent.)

12

In its <u>March 2022 Order</u>, the Court had ruled that:

> according to the terms of the 2019 Agreement,
> the library's extended closure due to the
> COVID-19 pandemic required that A.K.'s special
> education instruction take place in his home,
> if available[, and] [i]n the event Plaintiff's
> home is unavailable, . . ., the language of
> the 2019 Agreement is clear: The parties are
> to arrange for an <u>alternative</u>, <u>off-site</u>
> location.

(<u>March 2022 Order</u>, 2022 WL 866816, at *5.) (emphasis in original).

The Court further explained that:

> in an effort to accommodate Plaintiff's
> trepidations regarding having someone come
> into his home during the COVID-19 pandemic,
> the District offered A.K. remote instruction
> by the District's special education teacher.
> . . . Additionally, to alleviate Plaintiff's
> concern about missing work in order to
> supervise A.K. during home instruction, the
> District provided Plaintiff the option of
> providing A.K.'s special education
> instruction after regular school hours. . . .
> However, Plaintiff rejected these
> accommodations and made it clear that nothing
> short of having A.K. physically present in the
> District for his special education instruction
> would be acceptable.

(<u>Id.</u> at *6.)   In addition, the Court found that Plaintiff's

original Complaint made no allegations of bad faith or gross

misjudgment on the part of the District, but rather baldly alleged

that "the school district's actions reflect nothing short of abject

malice, gross indifference and/or retaliation against the

plaintiff." (<u>Id.</u> at *8.)

In his present Opposition, Plaintiff states:

> since the public library had chosen to remain
> closed in September 2020, as a byproduct of
> the Covid-19 pandemic, [A.K.]'s "in-person
> instruction" could not be accommodated at the
> library.  The defendant school district failed
> to offer an alternative situs for [A.K.]'s
> "in-person instruction", other than to demand
> that such "in-person instruction" occur within
> the plaintiff's home, which was unavailable.
> As a result, the parties were at an impasse.

(Opp'n at 3.)  It is apparent from Plaintiff's description of the situation that he fails to recognize three aspects of the Alternative, Off-Site Placement Provision, to which Plaintiff agreed:  (1) it applies to both parties; (2) it calls for the parties to seek a placement location that is off-site; and (3) it requires the parties to seek said location in good faith.  Yet, in his CAC, Plaintiff consistently misstated what the Alternative, Off-Site Placement Provision requires.  For example, as to the first component of the Alternative, Off-Site Placement Provision, and as articulated supra, in dismissing Plaintiff's IDEA-violation cause of action raised in the original Complaint, the Court already found said Provision was not directed solely to Defendants, but encompassed both Plaintiff and Defendants.  In other words, the parties were to work together – presumably, cooperatively -- to identify an alternative, off-site location.  As to the second component of the Alternative, Off-Site Placement Provision, the alleged fact that the District "had space to educate AK, as such

14

space would simply require the provision of space for a desk and
two chairs, [but] the [D]efendant [D]istrict simply refused to do
so" (CAC ¶ 147), is irrelevant since, by its terms, the
Alternative, Off-Site Placement Provision contemplated an off-site
location, not a location in the District's high school.  Finally,
as to the third component of the Alternative, Off-Site Placement
Provision, notably, there are no allegations that Plaintiff acted
in good faith -- on his own or with Defendants -- in seeking an
alternative, off-site location.  Rather, it appears Plaintiff
would have his lack of good faith excused because of the alleged
"'impossibly fulfillable' terms of the subject 'pendency
agreement'" (id. ¶ 148), baldly alleging "AK could not possibly be
educated during 'after-hours'[, an option the District offered
(see March 2022 Order, 2022 WL 866816, at *6),] because of other
family and extracurricular obligations." (Id. ¶ 152.)

        To the extent Plaintiff alleges that the District
"failed to investigate or secure an alternative and appropriate
education situs" (CAC ¶ 151; see also id. ¶¶ 143-44), in support
of his discrimination claims, his allegations are conclusory,
without any factual allegations which would establish the
plausibility of those claims.  Moreover, the validity of
Plaintiff's discrimination claims are undermined by his verified
allegation that, just as "AK cannot be held liable for the
inability for him to be educated at his home," "the [D]efendant

15

[D]istrict could not be held culpable for the inability for AK to be educated at the library during its closure."  (CAC ¶ 149.)

In sum, while Plaintiff's "impasse" characterization is generally accurate, and his allegations would support this position, plausibly alleging an impasse does not compel the conclusion that the District acted with deliberate or reckless indifference to A.K.'s federally protected rights or with bad faith or gross misjudgment.  See Pape, 2013 WL 3929630, at *11.  In other words, while Plaintiff may have preferred A.K. to have been educated in-District, i.e., in the District's high school, during the library's closure, the District's alleged refusal to accommodate Plaintiff's preference does not demonstrate bad faith or gross misjudgment.  Instead, upon carefully review of the CAC, the Court finds it does not allege facts that plausibly support Plaintiff's conclusory allegations of discrimination by Defendants based upon A.K.'s disability.  (See March 2022 Order, 2022 WL 866816, at *8 (citing Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").)  Hence, as Plaintiff's CAC fails to rectify the pleading deficiencies identified in the Court's March 2022 Order, Plaintiff's ADA and Section 504 claims are DISMISSED.

III. <u>Section 1983 Equal Protection Claim</u>

Plaintiff's CAC contains substantially similar allegations to those stated in his original Complaint, purporting A.K. is similarly situated to the alternately assessed students currently being educated in the District. (<u>Compare</u> <u>March 2022 Order</u>, 2022 WL 866816 at *10 (citing Compl. ¶¶ 18, 24), <u>with</u> CAC ¶¶ 162-63.) For the reasons that follow, the Court finds Plaintiff's CAC -- like his original Complaint -- fails to state a cognizable equal protection-based Section 1983 claim.

The Equal Protection Clause mandates that the Government treat "all similarly situated people alike." <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) (citing <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985)). The protections afforded by the Equal Protection Clause extend to "individuals who allege no specific class membership[,]" known as "class of one claims[,]" "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Id.</u> (quoting <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)) (per curiam).

To prevail on a "class of one" claim, "'the plaintiff must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are 'prima facie identical' in all other respects.'" <u>MB v. Islip Sch. Dist.</u>,

No. 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y. June 16, 2015)
(cleaned up); Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d
Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high
degree of similarity between themselves and the persons to whom
they compare themselves.")  More specifically, a plaintiff must
establish that he and a comparator are "prima facie identical" by
showing that:

> (i) no rational person could regard the
> circumstances of the plaintiff to differ from
> those of a comparator to a degree that would
> justify the differential treatment on the
> basis of a legitimate government policy; and
> (ii) the similarity in circumstances and
> difference in treatment are sufficient to
> exclude the possibility that the defendant
> acted on the basis of a mistake.

Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59-60 (2d
Cir. 2010), cert. denied, 562 U.S. 1108 (2010) (quoting Clubside,
468 F.3d at 159).

    To survive dismissal, a complaint must make sufficient
factual allegations in support of this similarity requirement.
See id. at 59 (citing Iqbal, 556 U.S. at 678.)  Courts require
"more than a bare allegation that other individuals were treated
differently."  Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d
404, 435 (S.D.N.Y. 2013) (citation omitted).  "[T]he court must
[ ] determine whether, based on a plaintiff's allegations in the
complaint, it is plausible that a jury could ultimately determine
that the comparators are similarly situated."  Id. at 434 (quoting

18

Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)).

In support of his class-of-one claim, Plaintiff alleges that "other than an age-disparity, AK profiles as being 'similarly situate[d]' to the other 'alternately assessed special education students' being educated within the defendant school district." (CAC ¶ 100.)  In an attempt to show similarity, Plaintiff alleges that "all 'alternately assessed special education students' are similar in a number of ways," including: being "defined as a class of students who are significantly cognitively disabled"; "receiv[ing] modified 'general education curriculum'"; "receiv[ing] modified grade-level learning standards"; "hav[ing] their mastery of curriculum measured by 'digital precursors' along a 'dynamic learning map,' as opposed to standardized testing methodology"'; having IEPS and CSEs; "receiv[ing] 'related services' and 'supplementary aids and services'"; "receiv[ing] educational accommodations"; "receiv[ing] specialized instruction"; and, "receiv[ing] special education." (CAC ¶¶ 102-112.)  However, such "general allegations of prima facie identicalness" "are too conclusory to plausibly allege the extremely high degree of similarity required to state a cognizable class-of-one claim." Killoran v. Westhampton Beach Sch. Dist., 19-CV-06663, 2022 WL 3309223 at *6 (E.D.N.Y. Aug. 10, 2022) ("In the context of a case involving alternately assessed special

education students, the fact that all special education students
are entitled to receive additional services, without more, fails
to demonstrate that A.K. is 'prima facie identical' to all of his
'non-typical' peers for the purposes of stating a class-of-one
claim."), aff'd, No. 22-1753, 2023 WL 4503274 (2d Cir. July 13,
2023) (summary order); see also Marino v. City Univ. of N.Y., 18
F. Supp. 3d 320, 341 (E.D.N.Y. 2014) (finding allegations that
"all students in [plaintiff's] seminar [class] were subject to the
same curriculum, syllabus, grading requirements, mandatory student
teaching, and overall course instructor" were too conclusory to
show "the high degree of similarity required" to state a cognizable
class-of-one claim).

Similarly, Plaintiff's allegation that two or three of
the four alternately assessed special education students being
educated within the District's alternately assessed special
education class have Down Syndrome, like A.K., fails to demonstrate
that they are "similarly situate." (CAC ¶¶ 116-120, 164-650.)  In
affirming the Court's dismissal of Plaintiff's Equal Protection
claims with respect to the 2015-2016 and the 2016-2017 academic
years, the Circuit Court held Plaintiff's proffered comparators
with Down Syndrome insufficient to support his claims since
Plaintiff failed to "identify specific characteristics that apply
to A.K. and the comparators beyond those that could apply to any
alternately assessed student."  Killoran, 2023 WL 4503274, at *2;

see also Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-3298, 2020 WL 4740498, at *11, n.12 (E.D.N.Y. June 24, 2020) (noting identifying five special education students by name without explaining how they are similarly situated to A.K. fails to plausibly allege "that at least one other student whose circumstances are prima facie identical to those of A.K. was treated differently than A.K."), report and recommendation adopted, 2020 WL 4743189 (July 27, 2020); Marino, 18 F. Supp. 3d at 341 (finding insufficient "Plaintiff's hypothetical and speculative claim that an investigation into her classmates' performances would reveal that they were similarly situated" to survive a dismissal motion).

Plaintiff attempts to show similarity by alleging "alternately assessed students" in the District's class were also recommended for placement in a 12:1:1 special class format" "pro[ving] that they all possess very similar learning characteristics." (CAC ¶ 123.) However, in two prior cases brought by Plaintiff, this Court already found that "these same alleged comparator students are not 'similarly situated' to A.K. because, unlike A.K., they fall within the state-imposed age restrictions placed upon the class."[6] Killoran, 2022 WL 3309223,

---

[6] Regulations of the New York State Education Department ("NYSED") provide "[t]he chronological age range within special classes of students with disabilities who are less than 16 years of age shall not exceed 36 months." 8 N.Y.C.R.R. § 200.6(h)(5). However,

at *8 (finding a three-year age difference between the alleged comparators and A.K. "underscores the lack of an extremely high degree of similarity" and "on this basis alone, a rational person could regard A.K.'s circumstances to be different to a degree justifying the District's differential treatment"), aff'd, 2023 WL 4503274, at *2 (noting 36-month age gap between A.K. and the eldest student was a "notable difference[] between A.K. and this comparator group"); Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-6663, 2021 WL 1146078, at *7 (E.D.N.Y. Mar. 25, 2021) (finding "Plaintiff's alleged comparator students not 'similarly situated' to A.K. because, unlike A.K., they fall within the state-imposed age restrictions placed upon the class").

Finally, Plaintiff contends that the NYSED's recent variance approval "regarding AK's placement within the defendant school district's existing 12:1:1 special class for the 2022-2023 academic year" further demonstrates that A.K. is similarly situate to the students within the District's existing 12:1:1 special class.[7] (Pl. Mar. 20, 2023 Letter, ECF No. 58.)  However, as

---

"[u]pon application and documented educational justification to the commissioner, approval may be granted for variance from the . . . chronological age range. . ." Id. § 200.6(h)(6).

[7] After initially denying the age variance request for the 2021-2022 school year, upon remand from the state court, the NYSED granted Plaintiff's age variance application for A.K. for the 2022-2023 school year.  (See Mar. 20, 2023 NYSED Variance Letter (hereafter, "NYSED Letter"), ECF No. 58 at 2-4 (noting state court's "December 13, 2022 Decision and Order made clear that the

Defendants correctly state, the NYSED "did not 'approve'" A.K.'s placement in the District's special class but rather "granted a variance application for a <u>consideration</u> of his placement in that class." (Defs. Mar. 22, 2023 Response Letter, ECF No. 59) (emphasis added).

> [C]onsistent with statute and regulation, there is no requirement that a school district provide a student with the placement that is the subject of the variance application. CSE's are vested with authority to make recommendations concerning a student's placement. Thus, if a variance application is granted, it <u>may</u> be utilized by a school district but is not required.

(NYSED Letter at 3, n.3 (emphasis in original).) Notably, Plaintiff acknowledges that the NYSED's variance approval does not automatically "place" A.K. in the District's 12:1:1 class, but argues it "most certainly bears upon whether or not the plaintiff profiled as being 'educationally similarly situate' to the other students in the subject class." (Pl. Mar. 23, 2023 Reply Letter, ECF No. 60.) That may be so for the 2022-2023 academic year, but the Court is unconvinced the same holds true regarding its current consideration of Plaintiff's Equal Protection claim relating to the 2020-2021 school year.

---

[state] Court deemed the October 1, 2021 application to have been 'effectively renewed' for the 2022-2023 school year"), <u>attached to</u> Pl. Mar. 20, 2023 Letter at 1.) Therefore, the District was directed to convene its CSE to determine a placement recommendation for A.K. for the remainder of the 2022-2023 school year. (<u>Id.</u>)

The NYSED's grant of Plaintiff's age variance application fails to support the present Equal Protection claim because the applicable standard is not whether an "educational justification" exists for purposes of the variance, but rather, whether claimant A.K. was prima facie identical to students in the District's 2020-2021 school year 12:1:1 class. Compare 8 N.Y.C.R.R. § 200.6(h)(6) ("Upon application and documented educational justification to the commissioner, approval may be granted for variance from the special class sizes and chronological age ranges specified in paragraphs (4) and (5) of this subdivision."), with MB, 2015 WL 3756875, at *10 (instructing that for a "class-of-one" claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake" (quoting Pappas v. Town of Enfield, No. 14-CV-2134, 2015 WL 2146140, at *1 (2d Cir. May 8, 2015)). Thus, notwithstanding the NYSED's granting A.K. an age variance for a subsequent academic year, because Plaintiff fails to plausibly allege how A.K.'s circumstances for the 2020-2021 academic year were prima facie identical to any alleged

24

similarly situate student, his Equal Protection claim cannot survive the present Dismissal Motion.

Accordingly, Plaintiff's Equal Protection-based Section 1983 claim is DISMISSED.

\* \* \*

For completeness, the Court addresses Plaintiff's newly asserted allegations in the CAC that relate to the District's conduct regarding A.K.'s education between 2015 and 2019. (CAC ¶¶ 8-53, 86-87, 94.) Defendants contend these allegations are time-barred because they occurred more than three years prior to the June 13, 2022 filing of the CAC. (See Support Memo at 10-12.) Plaintiff explains that "any factual allegations pre-dating 6/13/19 were simply offered to afford the Court with historical context and are not necessary to establish the plaintiff's cited causes of action." (Opp'n. at 4 ("To be clear, the plaintiff's ADA, 504 and 1983 claims relate exclusively to the actions of the defendants committed during the 2020-2021 academic year.").) Therefore, the Court need not address the Defendants' statute of limitations argument. Similarly, Plaintiff's allegations relating to a special class provided by the District for the 2021-2022 school year are irrelevant to ruling upon the instant Dismissal Motion, which relates to the 2020-2021 academic year. (See CAC ¶¶ 116-118, 165-67.)

IV.  <u>Leave to Amend</u>

The Second Circuit instructs "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend." <u>Roache v. Fischer</u>, No. 18-CV-0825, 2019 WL 6827296, at *5 n.12 (N.D.N.Y. Dec. 13, 2019) (citing <u>Shuler v. Brown</u>, No. 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. Mar. 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.")); <u>see also</u> <u>Yang v. N.Y.C. Trans. Auth.</u>, No. 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); <u>Advanced Marine Tech. v. Burnham Sec., Inc.</u>, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (same).

Since Plaintiff was already been afforded an opportunity to amend his ADA and Section 504 discrimination claims and his Equal Protection claims, the Court finds that leave to further amend would be futile and is, therefore, DENIED.

<u>CONCLUSION</u>

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Dismissal Motion (ECF No. 53) is

**GRANTED**; Plaintiff's ADA, Section 504 and Section 1983 claims related to the alleged pendency placement violation are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, as to Plaintiff's "Roth/Hauge Appeal" and "Schiro/Hauge Appeal", which have been consolidated in this action:

A. By no later than September 29, 2023, Plaintiff is to serve his summary judgment motion;

B. By no later than October 30, 2023, Defendants are to serve their response; and

C. By no later than November 13, 2023, Plaintiff is to serve his reply, if any.

**IT IS FURTHER ORDERED** that, as the movant, Plaintiff is to file all papers once the summary judgment motion is fully briefed.

                               **SO ORDERED.**

                               /s/ JOANNA SEYBERT
                               Joanna Seybert, U.S.D.J.

Dated:    August 28,2023
            Central Islip, New York